OPINION
{¶ 1} Appellant Kimble Mixer Company appeals the December 23, 2002, decision of the Tuscarawas County Common Pleas Court granting Appellees Bruce Hall and Bruce Hall Co., L.P.A.'s Motion for a Directed Verdict.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Kimble Mixer Company is a manufacturer of cement mixers and trucks. On November 2, 1994, Appellant Kimble entered into a Management Services Agreement with one James St. Vincent and his corporation, Montville Aircraft Corporation. Under said agreement, St. Vincent agreed to perform various services in connection with the manufacture, marketing and sales of Appellant Kimble Mixer's products in exchange for $7,000.00 each month for the first six (6) months of the business after which St. Vincent would receive thirty-percent (30%) of Appellant's gross profit. (T. at 224, 227-228, 619). The agreement also contained a covenant not to compete which prohibited St. Vincent from sharing product rights or knowledge for a period of three years after termination of the agreement.
 {¶ 3} Bruce Hall is a solo practitioner who served as the attorney for Defendant James St. Vincent ("St. Vincent"). Hall had a long business relationship with St. Vincent and his other business entities from at least 1992.
 {¶ 4} In 2001, Eric Kimble discovered that St. Vincent had embezzled in excess of $1.6 million dollars from Kimble Mixer Company. An investigation revealed that since 1992, Atty. Hall had permitted St. Vincent to deposit a significant amount of the $1.6 million into Hall's IOLTA account. St. Vincent deposited a total of sixty-one checks into Hall's IOLTA account. The checks totaled $559,600.96. These checks included three checks upon which St. Vincent forged Kimble's endorsement. After accepting the deposits, it appears that Hall permitted St. Vincent to use the IOLTA account as his personal checking account by directing Hall regarding the withdrawal of funds, how much and to whom to make the checks out. Twenty-seven of the checks Hall wrote to St. Vincent or his companies from the IOLTA account were individually equal to or greater than $10,000.00.
 {¶ 5} This practice of allowing St. Vincent to use Hall's IOLTA account apparently began back in 1992 when St. Vincent's wife became ill and ultimately passed away. (T. at 1571-1572). St. Vincent's wife had performed all the bookkeeping services for his businesses and when she became unable to perform these services, Atty. Hall began helping him manage his money. Id. St. Vincent would give Atty. Hall or his secretary checks for deposit and would then direct how he wanted these funds disbursed. (T. at 1651).
 {¶ 6} Upon discovery of these activities, Appellant Kimble Mixer filed an action in the Tuscarawas County Common Pleas Court on January 19, 2002, against James St. Vincent, and several entities operated by St. Vincent, for breach of contract, bad faith, conversion and piercing the corporate veil. Appellant subsequently filed an Amended Complaint including claims against Bruce Hall, individually and Bruce Hall Co., L.P.A. for conversion, civil conspiracy, civil aiding and abetting, fraudulent conveyance and legal malpractice.
 {¶ 7} This matter proceeded to trial in December, 2002. At the close of all the evidence, Hall filed a motion for a directed verdict on all of the claims against him and Bruce Hall Co., L.P.A. The trial court granted Hall's motion on December 23, 2002.
 {¶ 8} Following deliberations, the jury granted judgment in favor of Kimble Mixer and against St. Vincent on the counts of breach of contract, fraud and conversion. The jury awarded Kimble Mixer $2.1 million in compensatory damages and $2.9 million in punitive damages.
 {¶ 9} On January 10, 2003, St. Vincent filed a petition for bankruptcy in federal district court in Florida. As a result, the trial court has not determined attorney fees in this matter, which the jury also awarded Kimble Mixer.
 {¶ 10} Appellant appealed the decision of the trial court granting Appellees' Motion for Directed Verdict. See Kimble Mixer Co. v. BruceHall, Tusc. App. No. 2003 AP 01 0003, 2004-Ohio-1740. In this prior appeal, this Court remanded the matter back to the trial court for the limited purpose of permitting the trial court to state its specific reasons for granting Hall's motion for a directed verdict as it pertained to the particular area of deficiency on each of Kimble's claims against Hall.
 {¶ 11} On July 30, 2004, the trial court issued specific reasons per this Court's instruction.
 {¶ 12} Appellant now appeals the decision of the trial court and sets forth the following assignments of error for our consideration:[1]
 ASSIGNMENTS OF ERROR {¶ 13} "I. The trial court erred in granting the defendant-appellees' motion for directed verdict on plaintiff's claim of conversion.
 {¶ 14} "II. The trial court erred in granting the defendant-appellees' motion for directed verdict on plaintiff's claim of civil conspiracy.
 {¶ 15} "III. The trial court erred in granting the defendant-appellees' motion for directed verdict on plaintiff's claim of civil aiding and abetting.
 {¶ 16} "IV. The trial court erred in granting the defendant-appellees' motion for directed verdict on plaintiff's claim of fraudulent conveyance.
 {¶ 17} "V. The trial court erred in granting the defendant-appellees' motion for directed verdict on plaintiff's claim of legal malpractice.
 {¶ 18} "VI. The trial court erred in granting the defendant/appellees' motion for directed verdict by failing to construe the evidence "most strongly in favor of" kimble mixer company.
 {¶ 19} "VII. The trial court erred in granting the defendant/appellees' motion for directed verdict in reliance upon immunity under R.C. 4705.09."
 Standard of Review {¶ 20} Each of Appellant Kimble's assignments of error concern the trial court's decision to grant Hall's motion for a directed verdict.
 {¶ 21} Civ.R. 50 addresses when a motion for a directed verdict should be granted on the evidence. This rule states:
 {¶ 22} "(A) * * *
 {¶ 23} "(4) When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 24} Under Civ.R. 50(A) and (B), the standard of review of a ruling on a motion for a directed verdict is as follows:
 {¶ 25} "The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination * * *." Posin v. A.B.C. MotorCourt Hotel, Inc. (1976), 45 Ohio St.2d 271, 275.
 {¶ 26} This "reasonable minds" test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the non-moving party. Wagner v. RocheLaboratories (1996), 77 Ohio St.3d 116, 119-120. Our review of the trial court's disposition of these motions is de novo. Dramble v. Marc W.Lawrence Bldg. Corp., Stark App. Nos. 2001CA00332, 2002CA00337, 2002-Ohio-4752, at ¶ 17.
 {¶ 27} A motion for a directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116, 119-120,671 N.E.2d 252. When the party opposing the motion has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695, 586 N.E.2d 141.
 {¶ 28} This Court will review each of Appellant's assignments of error under this standard of review.
 I. {¶ 29} In its first assignment of error, Appellant Kimble Mixer argues that the trial court erred in directing a verdict on its claim of conversion against Appellees Hall. We disagree.
 {¶ 30} Conversion is defined as the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from the owner's possession under a claim inconsistent with his rights.State ex. rel Toma v. Corrigan (2001), 92 Ohio St.3d 589, 592,2001-Ohio-1289, 752 N.E.2d 281, quoting Joyce v. General Motors Corp.
(1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172.
 {¶ 31} Wrongful purpose or intent is not a necessary element of conversion; thus, a defendant is liable even if he is acting under a misapprehension or mistake. Fulks v. Fulks (1953), 95 Ohio App. 515,518-519, 121 N.E.2d 180.
 {¶ 32} In Ohio, to succeed on a claim of conversion, the plaintiff must prove (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." Haul Transport of Va., Inc. v. Morgan (June 2, 1995), 2nd Dist. App. No. CA14859.
 {¶ 33} In its July 30, 2004, Judgment Entry, the trial court held that "[t]here was no evidence that Hall converted monies for his own use" and therefore a claim of "conversion was not supported by the preponderance of the evidence."
 {¶ 34} We fail to find any evidence that Appellees committed any wrongful act or disposition of Appellant's property rights resulting in a conversion. The funds in questions were at all times, prior to disbursement, maintained in Appellees' IOLTA account. Funds deposited in an IOLTA account remain the property of the client. R.C. § 4507.09.
 {¶ 35} In sum, having reviewed the record and, upon consideration thereof and the law, it appears that when construing the evidence most strongly in favor of the appellant, reasonable minds could only conclude that Appellant failed to support the necessary elements of conversion and Appellees were entitled to judgment as a matter of law.
 {¶ 36} Appellant's first assignment of error is sustained.
 II. {¶ 37} In its second assignment of error, Appellant Kimble Mixer argues that the trial court erred in directing a verdict on its claim of civil conspiracy. We disagree.
 {¶ 38} Civil conspiracy is defined as a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages. Kenty v.Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, 650 N.E.2d 863.
 {¶ 39} In a claim for civil conspiracy, a claimant must prove 1) a malicious combination, 2) involving two or more persons, 3) causing injury to person or property, and 4) the existence of an unlawful act independent from the conspiracy itself. Pappas v. United Parcel Service
(Apr. 11, 2001), 9th Dist. No. 20226, at 10, citing Universal Coach,Inc. v. New York City Transit Auth., Inc. (1993), 90 Ohio App.3d 284,292, 629 N.E.2d 28; see, also, LeFort v. Century 21-Maitland RealtyCo. (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640 (defining civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."). Further, "[t]he malice involved must include an action done `purposely, without a reasonable or lawful excuse, to the injury of another.'" Pappas, supra, at 10, quoting Gosdenv. Louis (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481, appeal not allowed (1997), 78 Ohio St.3d 1456, 677 N.E.2d 816.
 {¶ 40} The trial court found:
 {¶ 41} "32. There was no evidence presented that Hall and St. Vincent had a common understanding or design to commit an unlawful act, i.e. misappropriation of Plaintiff's monies. There was no evidence presented of any agreement between Defendants Hall and St. Vincent to obtain any money, in any fashion, from Plaintiff. Hall's undisputed testimony was that St. Vincent and Kimble Mixer Company had a solid business relationship, and he had no reason to believe that there was anything untoward occurring that would have damaged that business relationship. Hall further testified, without challenge, that the business relationship between St. Vincent and Kimble Mixer Company was the key to St. Vincent's financial recovery." (July 30, 2004, Judgment Entry at 7).
 {¶ 42} Upon review, we agree with the trial court in that we find a complete lack of evidence establishing any kind of conspiracy. There was no evidence that Appellee knew the source of the funds which St. Vincent deposited in his IOLTA account or that Appellee purposely engaged in a malicious combination or that he had any type of agreement with St. Vincent to cause injury to Appellant or his property.
 {¶ 43} Appellant's second assignment of error is overruled.
 III. {¶ 44} In its third assignment of error, Appellant Kimble Mixer argues that the trial court erred in directing a verdict on its claim of civil aiding and abetting. We disagree.
 {¶ 45} In Aetna Casualty and Surety Co. v. Leahey Construction Co.,Inc. (6th Cir. 2000), 219 F.3d 519, the court found that under Ohio law a tort of civil aiding and abetting, as set forth by the Restatement (Second) of Torts, is a viable cause of action. Id. at 532-533. In a civil aiding and abetting case, a plaintiff must show "two elements: (1) knowledge that the primary party's conduct is a breach of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act." Id. (quoting Andonian v. A.C. S., Inc. (1994),97 Ohio App.3d 572, 647 N.E.2d 190, 191-92).
 {¶ 46} With regard to this claim, the trial court found:
 {¶ 47} "34. The evidence presented supported the conclusion that no one, including Hall, had any reason to believe that St. Vincent was engaged in any wrongdoing or would take any action to harm his business relationship with Kimble Mixer Company.
 {¶ 48} "35. Based on this evidence, and lack of knowledge by Hall of the source of the monies deposited by St. Vincent's alleged inappropriate conduct in obtaining the monies, Directed Verdicts were granted on the Conspiracy and Civil Aiding/Abetting claims." (July 30, 2004, Judgment Entry at 7-8.)
 {¶ 49} Upon review, we find a lack of evidence of any knowledge on the part of Appellees that St. Vincent was engaging in a tortious act, that being embezzlement of Appellant's funds, nor do we find any evidence that Appellees encouraged or assisted St. Vincent in such acts.
 {¶ 50} Appellant's third assignment of error is overruled.
 IV. {¶ 51} In its fourth assignment of error, Appellant Kimble Mixer argues that the trial court erred in directing a verdict on its claim of fraudulent transfers. We disagree.
 {¶ 52} The Ohio Uniform Fraudulent Transfer Act, R.C. Chapter 1336, creates a right of action for a creditor to set aside an allegedly fraudulent transfer of assets.
 {¶ 53} Under R.C. 1336.01(L), a "transfer" is defined as "every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."
 {¶ 54} R.C. 1336.04(A) provides that:
 {¶ 55} "A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 {¶ 56} "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
 {¶ 57} "(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
 {¶ 58} "(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
 {¶ 59} "(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
 {¶ 60} The issue concerning fraudulent intent is to be determined based upon the facts and circumstances of each case, and "[t]he burden of proof in an action to set aside a fraudulent conveyance must be affirmatively satisfied by the complainant." Stein v. Brown (1985),18 Ohio St.3d 305, 308, 480 N.E.2d 1121. However, in order to succeed on a fraudulent transfer claim, a creditor need not prove the elements of common-law fraud." Lesick v. Medgroup Mgt., Inc. (Oct. 29, 1999), Hamilton App. No. C-990097. Because of the difficulty in obtaining direct proof of fraudulent intent, "courts have recognized certain `badges' or indicia of fraud, circumstances which usually or frequently attend a conveyance designed to hinder, delay, or defraud a creditor, which in concert with other suspicious circumstances, are considered sufficient to prove fraudulent intent." Barbee Concrete Constr. v. Bachinski Builders,Inc. (Nov. 20, 1997), Franklin App. No. 97APE03-397.
 {¶ 61} R.C. 1336.04(B) sets forth several of the well-established "badges" of fraud, and states as follows:
 {¶ 62} In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
 {¶ 63} "(1) Whether the transfer or obligation was to an insider;
 {¶ 64} "(2) Whether the debtor retained possession or control of the property transferred after the transfer;
 {¶ 65} "(3) Whether the transfer or obligation was disclosed or concealed;
 {¶ 66} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
 {¶ 67} "(5) Whether the transfer was of substantially all of the assets of the debtor;
 {¶ 68} "(6) Whether the debtor absconded;
 {¶ 69} "(7) Whether the debtor removed or concealed assets;
 {¶ 70} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
 {¶ 71} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
 {¶ 72} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
 {¶ 73} "(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.
 {¶ 74} In the case sub judice, the only acts made by Appellee, or his secretary, were those acts of depositing St. Vincent's checks into the IOLTA account and then disbursing those funds as directed by St. Vincent.
 {¶ 75} Appellant's fourth assignment of error is overruled.
 V. {¶ 76} In his fifth assignment of error, Appellant Kimble Mixer argues that the trial court erred in directing a verdict on its claim of legal malpractice. We disagree.
 {¶ 77} The Ohio Supreme Court has held that "[t]o establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Vahila v. Hall, 77 Ohio St.3d 421,1997-Ohio-259, at syllabus. See, also, Krahn v. Kinney (1989),43 Ohio St.3d 103.
 {¶ 78} In the case sub judice, there is no evidence that Appellees ever represented Appellant Kimble Mixer Company. Appellant, instead is arguing that Appellees should be liable based on the legal representation of St. Vincent.
 {¶ 79} It is well-established in Ohio that an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice. Simon v. Zipperstein (1987), 32 Ohio St.3d 74,76, 512 N.E.2d 636, citing Scholler v. Scholler (1984), 10 Ohio St.3d 98,462 N.E.2d 158, paragraph one of the syllabus.
 {¶ 80} As explained in Simon v. Zipperstein (1987), 32 Ohio St.3d 74,76, 512 N.E.2d 636, citing Scholler v. Scholler (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, supra:
 {¶ 81} "The rationale for this posture is clear: the obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client. As was stated by the court in W.D.G., Inc. [v. Mut. Mfg. Supply Co. (1976), 5 O.O.3d 397]:
 {¶ 82} "`* * * Some immunity from being sued by third persons must be afforded an attorney so that he may properly represent his client. To allow indiscriminate thirdparty actions against attorneys of necessity would create a conflict of interest at all times, so that the attorney might well be reluctant to offer proper representation to his client in fear of some third-party action against the attorney himself.' Id. at 399-400." Id., 32 Ohio St.3d at 76, 512 N.E.2d 636.
 {¶ 83} Thus, notwithstanding a finding of privity, the issue resolves to whether Apellees acted maliciously.
 {¶ 84} As observed in Luciani v. Schiavone (Jan. 2, 2001), S.D. Ohio No. C-1-97-272, 2001 WL 1842457:
 {¶ 85} "* * * Ohio courts have provided precious little guidance in the interpretation of the maliciousness requirement of Scholler and similar cases. Two Ohio appellate courts have opined that an attorney may act maliciously when he acts with an ulterior motive separate and apart from his client's interests. See Thompson v. R R Service Systems,Inc., Nos. 96APE10-1277, 96APE10-1278, 1997 WL 359325, (Ohio Ct.App. Franklin Cty. June 19, 1997); Fallang v. Hickey, No. CA86-11-163, 1987 WL 16298 (Ohio Ct.App. Butler Cty. [Aug. 31, 1987]). * * * [H]owever, Ohio law does not require that a plaintiff prove such a motive in order to overcome the general immunity identified in Scholler, supra.
 {¶ 86} "In a decision post-dating Scholler, the Ohio Supreme Court suggested that an attorney acts maliciously when special circumstances `such a [sic] fraud, bad faith, [or] collusion' are present. Simon v.Zipperstein, 32 Ohio St.3d 74, 76-77 [512 N.E.2d 636] (1987). See alsoFirestone v. Galbreath, 976 F.2d 279, 287 (6[th] Cir. 1992)."
 {¶ 87} The trial court found that "[t]here was no evidence presented of any malice on the part of Hall toward Plaintiff. There was no evidence that Hall ever represented the Plaintiff in any capacity." (July 30, 2004, Judgment Entry at 8.)
 {¶ 88} Upon review, for the reasons listed in the previous assignments of error, we fail to find any evidence of malice in the form of fraud, bad faith, or collusion on the part of Appellees.
 {¶ 89} Appellant's fifth assignment of error is overruled.
 VI. {¶ 90} In its sixth assignment of error, Appellant Kimble Mixer argues that the trial court erred in directing a verdict by failing to construe the evidence most strongly in favor of Kimble Mixer Company. We disagree.
 {¶ 91} For the reasons stated in the previous five assignments of error, we find that the trial court did construe the evidence most strongly in favor of Appellant but that even in so doing, the lack of evidence as to the essential elements of each claim required the trial court to grant the motions for directed verdict.
 {¶ 92} Appellant's sixth assignment of error is overruled.
 VII. {¶ 93} In its seventh and final assignment of error, Appellant Kimble Mixer argues that the trial court erred in directing a verdict in reliance upon immunity under R.C. § 4705.09. We disagree.
 {¶ 94} R.C. § 4705.09 states:
 {¶ 95} "(A)(1) Any person admitted to the practice of law in this state by order of the supreme court in accordance with its prescribed and published rules, or any law firm or legal professional association, may establish and maintain an interest-bearing trust account, for purposes of depositing client funds held by the attorney, firm, or association that are nominal in amount or are to be held by the attorney, firm, or association for a short period of time, with any bank or savings and loan association that is authorized to do business in this state . . .
 {¶ 96} "(2) Each attorney who receives funds belonging to a client shall do one of the following:
 {¶ 97} "(a) Establish and maintain one or more interest-bearing trust accounts in accordance with division (A)(1) of this section or maintain one or more interest-bearing trust accounts previously established in accordance with that division, and deposit all client funds held that are nominal in amount or are to be held by the attorney for a short period of time in the account or accounts;
 {¶ 98} "(b) * * *
 {¶ 99} "(3) No funds belonging to any attorney, firm, or legal professional association shall be deposited in any interest-bearing IOLTA account established under division (A)(1) or (2) of this section, except that funds sufficient to pay or enable a waiver of depository institution service charges on the account shall be deposited in the account and other funds belonging to the attorney, firm, or association may be deposited as authorized by the Code of Professional Responsibility adopted by the supreme court. The determinations of whether funds held are nominal or more than nominal in amount and of whether funds are to be held for a short period or longer than a short period of time rests in the sound judgment of the particular attorney. No imputation of professional misconduct shall arise from the attorney's exercise of judgment in these matters."
 {¶ 100} In its July 30, 2004, Judgment Entry the trial court held that `[t]he immunity provisions of R.C. § 4507.09 apply to this case inasmuch as Hall had the discretion to allow St. Vincent to use the account."
 {¶ 101} While allowing St. Vincent to deposit the subject funds and request disbursement of same as directed may not have been the wisest decision, we find that Atty. Hall is provided immunity under R.C. § 4507.09
for exercising his discretion and allowing same, in the absence of evidence of fraud or knowledge of illegal conduct.
 {¶ 102} Appellant's seventh assignment of error is overruled.
 {¶ 103} For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed .
Boggins, J., Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the appeal from the judgment of the Tuscarawas County Common Pleas Court, Tuscarawas County, Ohio, is affirmed. Costs assessed to Appellant.
[1] Upon transcription of the proceedings, it was discovered that some testimony, including that of Joanne Hodges, Hall's former secretary, had not been preserved. Pursuant to App.R. 9(C), the trial court accepted the statement of Ms. Hodges in lieu of her testimony.