[Cite as *Barnosky v. Barnosky*, 2022-Ohio-2928.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| JOHN E. BARNOSKY, JR., | **CASE NO. 2022-P-0008** |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| JOHN E. BARNOSKY, SR., et al., | |
| Defendants, | Trial Court No. 2020 CV 00281 |
| CHARLES BARNOSKY, et al., | |
| Defendants-Appellants. | |

## **O P I N I O N**

Decided: August 22, 2022
Judgment: Affirmed

*Jonathan P. Blakely*, P.O. Box 217, Middlefield, OH 44062 (For Plaintiff-Appellee).

*Charles A.J. Strader*, Attorney Charles Strader, LLC, 175 Franklin Street, S.E., Warren, OH 44481 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Charles Barnosky, appeals the decision of the Portage County Court of Common Pleas, entering judgment in favor of plaintiff-appellee, John E. Barnosky, Jr., on a claim of Conversion. For the following reasons, we affirm the judgment of the court below.

{¶2} On May 1, 2020, John E. Barnosky, Jr., filed a Complaint against John E. Barnosky, Sr., Jennifer Casey (his sister) as trustee of the "John E. Barnosky Living

Trust," and Charles Barnosky (his brother) both individually and as trustee of the "JEB Farm Irrevocable Trust." Relevant to the present appeal, John, Jr. raised a claim for Conversion against Charles. John, Jr. alleged that he "owns tools, equipment, guns and other items" at a farm owned by their father. He further alleged that Casey "refused to return those items * * * when she was trustee of the farm trust," and that Charles, the current trustee of the farm trust, "refuses to surrender [the] property to him."

{¶3} The Conversion claim was tried against Charles only before a magistrate on June 1, 2020. The following testimony was presented:

{¶4} John, Jr. testified that his father, John, Sr., owned and operated the farm in Portage County. When John, Jr.'s house was foreclosed in 2011, his father allowed him to store his tools and equipment in "a big white steel building" (also called a "shop" and a "barn") on the property. He allowed John, Jr. to "come and go as [he] pleased," taking and returning the tools as needed. John, Jr. worked out of state for a number of years but returned to Ohio in 2015. After his father moved to Tennessee, John, Jr. was no longer allowed to access his tools. The last time John, Jr. saw his tools was "around the first four, maybe five months of 2018." According to John, Jr., Charles "told me he put up no trespassing signs there and I was not welcome. And if I set foot there, I would be considered a hostile threat and he would act accordingly."

{¶5} John, Jr. testified that Plaintiff's Exhibit A was "a handwritten list that I made up off of my memory of all my belongings [mostly tools] that are at the farm that my brother, Charles, has denied me access to." He purchased "some" of these tools himself and "somewhere around two-thirds" of them were given to him by his uncle, Jim Burke,

2

in the summer of 2010. After "look[ing] all that stuff up," John, Jr. opined the value of the property to be $48,900.[1]

{¶6} Elena Barnosky, John, Jr.'s wife, testified that he purchased all his tools except the ones given to him by Burke. John, Sr. allowed John, Jr. to keep the tools in a "big barn" at the farm. It was a "designated spot" solely for John, Jr.'s tools. They have not had access to any of their belongings since John, Sr.'s departure for Tennessee.

{¶7} Jim Burke testified that, when he retired in 2010, he gave his tools to John, Jr. A list of these tools was contained in Plaintiff's Exhibit C.

{¶8} Charles Barnosky testified that, in 2014, his father, John, Sr., told him that he had purchased the tools from John, Jr. In the summer of 2015, John, Jr. told him that he had sold the tools to their father, but he did not want Burke to know this. Both Charles and his father used the tools in the operation of the farm. After returning to Ohio, John, Jr. was also allowed to use the tools. Charles testified that the last time John, Jr. was on the farm working was the summer of 2019. In June 2019, his father confided that he believed John, Jr. had stolen guns from him and that he did not want John, Jr. on the property. In July, the trusts were created with their sister, Casey, as trustee. Charles was allowed "to live there and watch over the place." In February 2020, he became trustee. It is Charles' belief that the tools and equipment identified in Plaintiff's Exhibit A belong to the trusts by virtue of being sold to John, Sr. prior to their creation.

{¶9} On June 3, 2021, a Magistrate's Decision was issued in favor of John, Jr.: "The Court does not find that there is credible evidence that exists to support the claim

---

1. The magistrate awarded damages in the amount of $48.910 based on the calculations in Exhibit A, rather than John, Jr.'s oral testimony.

3

that the tools in controversy (Plaintiff's Exhibit A) were given to Sr. as a form of payment. By a preponderance, Jr. has proven his right to ownership of the tools at the time of the conversion. Further, Chuck [Charles] as trustee has wrongfully exerted control over Jr.'s property and denied him possession. Finally, Jr. has proven damages associated with the tools." The magistrate ruled that John, Jr. "shall be given access to retrieve his tools listed in Exhibit A from the farm at a date and time acceptable to both parties." But, "[i]f the tools have been disposed of and are not available, judgment is granted in favor of John E. Barnosky, Jr. against Charles Barnosky, Trustee in the amount of $48,910." The trial court adopted the Magistrate's Decision on the same date.

{¶10} On June 16, 2021, Charles filed Objections to the Magistrate's Findings. The trial court overruled the Objections on January 4, 2022.

{¶11} On January 12, 2022, Charles filed a Notice of Appeal. On appeal, he raises the following assignments of error:

> [1.] The Trial Court erred in granting judgment against the Defendant/Appellant, as it was against the manifest weight of the evidence that Defendant/Appellant had dominion and control over the alleged property at the time of the request for the return of the property.
>
> [2.] The Trial Court erred in granting judgment against the Defendant/Appellant, as Plaintiff/Appellee presented no evidence of ownership of the property alleged.
>
> [3.] The Trial Court erred in granting judgment against the Defendant/Appellant, as Plaintiff/Appellee did not present any evidence that the alleged property was located at 9846 Nichols Road, Windham, Ohio.
>
> [4.] The Trial Court erred in granting judgment against the Defendant/Appellant, as Plaintiff/Appellee presented hearsay testimony regarding the value of the alleged property.

4

{¶12} When the trial court acts as the trier of fact in a civil trial, a concurrence of two appellate judges has authority to reverse a judgment as being against the manifest weight of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 7. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury [or trier of fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*'" (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "The [reviewing] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury [or trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Citation omitted.) *Id.* *See also Koller v. Zellman*, 11th Dist. Geauga No. 2018-G-0153, 2018-Ohio-2463, ¶ 31 ("generally an abuse of discretion standard is applied to an appeal from a trial court's judgment adopting a magistrate's decision[,] * * * [h]owever, in cases involving the weighing of facts, this court has applied a manifest weight of the evidence standard").

{¶13} We note that several of Charles' arguments are properly challenges to the sufficiency of the evidence, i.e., that John, Jr. failed to present "any evidence" or "no evidence" on a particular issue. The Ohio Supreme Court has affirmed that, even in civil

cases, the concepts of sufficiency and manifest weight of the evidence are distinct and retain independent force. *Eastley* at ¶ 17. "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury [or trier of fact] or whether the evidence is legally sufficient to support the * * * verdict as a matter of law." (Citation omitted.) *Thompkins* at 386. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.*

{¶14} Conversion is defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). The elements of conversion are commonly stated as: "(1) the plaintiff's ownership and right to possess the property at the time of the conversion; (2) the defendant's conversion by wrongful act of plaintiff's property rights; and (3) damages." *Martin v. MAHR Machine Rebuilding, Inc.*, 11th Dist. Lake No. 2015-L-101, 2017-Ohio-1101, ¶ 13.

{¶15} Under the first assignment of error, Charles argues that John, Jr. failed to prove that, "at the time of requesting the removal of tools from the property," he (Charles) "was in the role of Trustee of JEB Farm Irrevocable Trust." Since the JEB Trust "was the entity that would have been exercising dominion and control," John, Jr. would have had to make the request to Charles in his role as trustee, i.e., sometime after Charles became trustee in February 2020. The evidence in the record suggests that Charles excluded John, Jr. from the property when the trusts were created in 2019, prior to Charles becoming trustee. Appellant's Brief at 9-11. Charles' position, apparently, is that, in order

6

for him to be liable, John, Jr. had to have demanded the property while he was serving as trustee and there is no evidence that such demand occurred during that time.

{¶16} We find no merit to Charles' argument. The essential fact is that Charles exercised wrongful dominion over John, Jr.'s property by excluding him from accessing that property. Charles' own testimony demonstrates that Charles did this at his father's behest[2] prior to February 2020, and in his capacity as trustee after February 2020. The fact that Charles was not trustee prior to February 2020 is not material.

{¶17} To establish conversion, it is not absolutely necessary that John, Jr. request or demand the return of his property. It is even less necessary that such a demand be made of Charles subsequent to his appointment as trustee.

> Conversion * * * requires nothing more than the defendant possessing a plaintiff's chattel and being unwilling to give it back. See Keeton, Prosser & Keeton on Torts (1984), 88 *et seq.* Sec. 15-Conversion. There is no requirement that the personal property be wrongfully obtained. Although a demand and refusal to return the personal property is ordinarily necessary to prove conversion, acts by a defendant which are inconsistent with the right of a plaintiff's ownership are sufficient to satisfy this requirement.

*Kiss v. Dick Baker Dodge*, 6th Dist. Erie No. E-98-027, 1998 WL 904920, *3; *Baltimore & Ohio RR. Co. v. O'Donnell*, 49 Ohio St. 489, 32 N.E. 476 (1892), paragraph two of the syllabus ("[a]ny wrongful exercise of dominion over chattels in exclusion of the rights of the owner, or withholding of them from his possession under a claim inconsistent with his rights, constitutes a conversion").

---

2. The magistrate did not find Charles' testimony that the tools were sold or given to John, Sr. credible. The essential point remains that Charles denied John, Jr. access to the tools. *Kimble Mixer Co. v. Hall*, 5th Dist. Tuscarawas No. 2003 AP 01 0003, 2005-Ohio-794, ¶ 31 ("[w]rongful purpose or intent is not a necessary element of conversion"); *Baltimore & Ohio* at paragraph five of the syllabus.

7

{¶18} Charles argues the present situation is comparable to *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.*, 24 Ohio App.3d 91, 493 N.E.2d 289 (10th Dist.1985), in which it was held that demand and refusal were necessary to establish a conversion. The plaintiff was a lessor of telephone equipment, and the defendant was the lessee's landlord. The plaintiff had demanded the return of the equipment on several occasions but prior to the landlord's possession of the lessee's premises. Accordingly, the court of appeals affirmed "that plaintiff was required to make a new demand before it could be found that a conversion had taken place." *Id.* at 94.

{¶19} *Ohio Tel.* is readily distinguishable. At the times the demands were made for the return of the equipment, "there was no indication that defendant exercised any dominion or control over plaintiff's phone equipment." *Id.* at 93. In the present case, there is evidence that Charles exercised dominion and control over the tools prior to becoming trustee. According to John, Jr.'s testimony, Charles told him he was "not welcome" and would be considered a "hostile threat" if he entered the farm property. Charles confirmed that he excluded John, Jr. from the property albeit at his father's request. Charles testified that, after the creation of the trusts, he was allowed to live on and watch over the property which is sufficient to establish his dominion and control of the tools.

{¶20} In *Ohio Tel.*, after the defendant took possession of the equipment, "there was no evidence presented that defendant ever refused to make the phones available for plaintiff's removal." *Id.* at 94. By contrast, in the present case, there is evidence of Charles being unwilling to allow John, Jr. access to the tools which Charles maintains do not belong to him. In light of Charles' consistent denial of John, Jr.'s rights over the

8

property and, after 2019, access to the property, it was not necessary for John, Jr. to make a new demand for its return after Charles became trustee.

{¶21} The first assignment of error is without merit.

{¶22} In the second assignment of error, it is argued that John, Jr.'s ownership of the property in question is against the weight of the evidence. Charles notes that John, Jr. "produced no written receipts, no bill of sale, [and] no owner's manual * * * that he purchased these items." Similarly, Burke "did not have any documentation pertaining to ownership, nothing in writing stating the exact date that 'ownership' of the tools was given to Plaintiff/Appellee," and did not fill out IRS forms reporting a gift of property of substantial value. Finally, Charles maintains that John, Jr.'s testimony tends to suggest that he abandoned the property on John, Sr.'s property. Appellant's Brief at 11-14.

{¶23} Charles' arguments on appeal do not compel reversal. Initially, we note that at trial Charles neither disputed the existence of the tools or that John, Jr. owned them. The principal fact in contention was whether he had sold them to John, Sr. A lack of documentary evidence as to how John, Jr. acquired the tools is not particularly relevant where, as here, his initial ownership of the tools is not in dispute. The theory that John, Jr. abandoned the tools is not supported by the testimony of either John, Jr. or Charles, both of whom stated that John, Jr. continued to use the tools until he was denied access to them. In the present case, deference to the magistrate's findings is warranted. *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 21 ("every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding[s] of fact") (citation omitted).

{¶24} The second assignment of error is without merit.

9

Case No. 2022-P-0008

{¶25} Similarly in the third assignment of error, Charles contends that the presence of the tools on the farm property is against the weight of the evidence. Charles notes that, according to John, Jr.'s testimony, he was last on the farm in 2018, i.e., about two years prior to trial. Thus, he "would have no way of knowing where each, and every, item is on **Exhibit 'A'** and **Exhibit 'C.'**" Additionally, John, Jr. testified that he took some tools with him when he went to work out-of-state, and, according to Charles, continued to do so through October 2019.[3] There was no evidence as to what tools were taken and what tools remained. Appellant's Brief at 14-16.

{¶26} Again, we defer to the magistrate's finding that Exhibit A accurately reflects the tools that are at issue. John, Jr. testified that the items identified in the Exhibit were "all of my belongings that are at the farm that my brother, Charles, has denied me access to." The passage of time between John, Jr.'s last opportunity to view his tools and the creation of the Exhibit certainly bears on the weight to be accorded the Exhibit, but does not preclude a finding in favor of the Exhibit's accuracy.

{¶27} The third assignment of error is without merit.

{¶28} In the fourth and final assignment of error, Charles argues that John, Jr.'s testimony regarding the value of his property was improper for two reasons. The first is that the testimony was based "on internet research[4], which is hearsay, as it is the opinion

---

3. We note a discrepancy between John, Jr.'s testimony that the last time he saw his tools was in 2018 and Charles' testimony that John, Jr. was allowed access to his tools into 2019. There is a further discrepancy in Charles' own testimony. At one point, Charles testified that John, Jr. continued "coming over to the farm and taking stuff" in October 2019. Later, Charles corrected himself and testified that it was in July 2019, when the trusts were created, that John, Jr. was no longer allowed on the property. The magistrate found that the trusts were created in 2019 and that, "[a]fter the creation of the Trusts, Chuck informed Jr. that he is persona non grata from the farm."

4. We note that John, Jr. did not mention the internet in his testimony, but only that he "looked all that stuff up" without elaboration as to where or how.

Case No. 2022-P-0008

of value by third parties." Secondly, John, Jr. did not establish that he was "qualified to express an expert opinion of the property." Appellant's Brief at 16-17. No cases are cited in Charles' appellate brief in support of this assignment of error. John, Jr. counters that, under the owner-opinion rule, "Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property." (Citation omitted.) *Johnson v. Clark Cty. Bd. of Revision*, 155 Ohio St.3d 264, 2018-Ohio-4390, 120 N.E.3d 823, ¶ 21.

**{¶29}** We note that no objection was raised at trial or in the written objections to John, Jr.'s testimony regarding the value of the tools. It is well-established that the failure to object to the admission of evidence at trial constitutes a waiver to the challenge of its admission on appeal. *Berete v. Berete*, 10th Dist. Franklin No. 20AP-478, 2021-Ohio-2941, ¶ 9; *Mentor Economic Assistance Corp. v. Eichels*, 2016-Ohio-1162, 61 N.E.3d 670, ¶ 24 (11th Dist.); Evid.R. 103(A)(1) ("[e]rror may not be predicated upon ruling which admits * * * evidence unless * * * a timely objection or motion to strike appears of record"); Civ.R. 53(D)(3)(b)(iv) ("[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding * * * unless the party has objected to that finding").

**{¶30}** "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus; *compare Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223-224,

11

480 N.E.2d 802 (1985) (the error of instructing the jury on rescission where it "was not a proper remedy under the facts of the case or under Ohio law * * * was of such an egregious nature that reversal is necessitated under the exceptional doctrine of plain error").

{¶31} With respect to the present case, the law is clear that the owner of personal property "has a sufficient knowledge of its value to be qualified to give an opinion thereon which will be some evidence of the actual value, though not conclusive." *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 626, 605 N.E.2d 936 (1992). While there were grounds for challenging John, Jr.'s testimony regarding the value of the tools, the mere existence of such arguments does not put this case in the category of those extremely rare cases involving exceptional circumstances. In other words, the fact that the error is arguable does not, in the present case, undermine the legitimacy of the underlying judicial process itself. There was evidence in the record supporting the award of damages that has not been successfully challenged.

{¶32} The fourth assignment of error is without merit.

{¶33} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed. Costs to be taxed against the appellant.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

12

Case No. 2022-P-0008