## SMITH v MILLHOFF

Ohio Appeals, 2nd Dist, Montgomery Co

No 1325. Decided July 24, 1935

Clyde H. Miller, Dayton, for plaintiff in error.

D. H. Wysong, Dayton, and J. W. Sharts, Dayton, for defendant in error.

## OPINION

By BARNES, PJ.

We find that the motion is well taken and that the cross petiti-n in error must be dismissed on the several grounds set out in said motion.

Coming now to consider the proceedings in error on behalf of plaintiff in error, Cortez M. Smith, we find that the petition in error sets out eight separate specifications of error.

In the brief of counsel for plaintiff in error no attempt is made to follow the specifications set out in the petition in error, but special stress is placed upon the claimed error in the court's refusal to give special instructions Nos. 1 and 2 requested before argument and the further claim that under the law and the facts the verdict and judgment should have been for the defendant and against the plaintiff; also that under any theory of the case the amount of the verdict is excessive.

The following is a brief summary of the facts out of which grew the litigation.

On and before July, 1927, the plaintiff Stephen L. Millhoff, owned a twenty-three acre tract of land in or near Marlin Heights, Montgomery County, Ohio. The buildings thereon consisted of a log house and a small barn. The tract was used as a small dairy farm. It was located on a side road just off of U. S. 25, about eight or nine miles from the center of the City of Dayton. The title to this twenty-three acre tract was in the plaintiff, Stephen L. Millhoff, subject to a mortgage of $2900.00 to the West Side Building and Loan, of Dayton, Ohio.

On this same date, the defendant, Cortez M. Smith, owned an eighty-seven acre tract, more or less, title being in wife, in Montgomery County, located two and one-

half miles south, on the Eaton Pike. Irene Millhoff was the wife of Stephen L. Millhoff, and Bertha M. Fortney was her daughter by a former marriage. Charles M. Fortney was a metal worker in the City of Dayton, and at this time was out of work. The Fortneys had little or no experience in farming. However, the Millhoffs and the Fortneys talked over the possibility of securing a larger farm and going into the dairy business together. Early in July, the plaintiff, Stephen L. Millhoff, was approached by a Mr. Jeffreys, a real estate operator within the City of Dayton, and in this conversation Jeffreys was advised that the Millhoffs and the Fortneys were in the market for trading for a larger farm in order to use it for dairy purposes together. At about the same time Jeffreys contacted the defendant, Cortez M. Smith, and ascertained that his farm of eighty-seven acres was on the market for sale or trade.

Jeffreys took the plaintiff Millhoff to see the Smith farm and Smith went out to look over the twenty-three acre farm. Within a week or less a written contract for exchange or trade of farms was entered into, on the basis that Smith would assume the $2900.00 mortgage on the twenty-three acre farm and the Millhoffs and Fortneys would assume a $7900.00 mortgage on the eighty-seven acre farm.

Deeds were executed within a few days after the written contract was entered into. It was provided in the written contract for trade and also in the deeds that possession of the respective tracts was to be given March 1, 1928.

In a few months following the exchange of deeds, the plaintiff Millhoff, was anxious to obtain immediate possession of the eighty-seven acre farm and this desire was communicated to Smith. The defendant, Smith, reported back that arrangements could not be made with the tenant to have him give up the farm before March 1, 1928. At this time Smith told the Millhoffs and Fortneys that he had another farm of eighty-nine acres, located in German Township, Montgomery County, Ohio, that he would trade them for the eighty-seven acre farm, at a price of $1900.00 less than the mortgage indebtedness remaining on the eighty-seven acres. The Millhoffs and Fortneys looked over the German Township farm and shortly thereafter deeds were exchanged.

The Fortneys had no capital and no property beyond a small equity in a property in the City of Dayton, on which they were paying under a sale contract. The Millhoffs and Fortneys moved to the eighty-nine acre farm some time in October, 1927, and immediately started their operations in the dairy business, not jointly, but separately. Smith sold to Fortney the cows, taking back a chattel mortgage. Feed was also sold to the Fortneys and Millhoffs by Smith.

A few months later Fortney, upon being reimbursed for his outlay of money, conveyed his one-half interest in the German Township farm to Millhoff.

Thereafter tragic events followed with speed and in numbers.

Mr. Millhoff's wife separated from him and went to live with her daughter, Mrs. Fortney. The plaintiff, Mr. Millhoff, wandered from his home and wound up in the asylum. After a period of months, he was released from the asylum and then went to the infirmary. The stock on the farm was abandoned and Smith took possession of it under his chattel mortgage. In time a loan company holding first mortgage on the German Township farm, brought foreclosure proceedings and after a delay of a couple of years the property was sold to Mr. Smith for $3200.00.

There was nothing saved out of the wreck for the plaintiff Millhoff, and he wound up with a deficiency judgment against him on the second mortgage held by Smith.

The following are the allegations of fraud set forth in plaintiff's second amended petition against the defendant, Cortez M. Smith:

"That plaintiff was by reason of his age, being 61 years of age, and being very hard of hearing and being unable to read or write except to write his signature, and because of mental and physical weakness at the time, unable properly to protect himself against misrepresentations; that he was ignorant of the truth, that he relied upon said misrepresentations, and was induced thereby to enter into said deals and to sign and execute said deeds, notes and mortgages; and defendants at the time of making said misrepresentations well knew them to be false. Said false and fraudulent misrepresentations were as follows, to-wit:

That on or about July 13, 1927, the defendant Cortez M. Smith stated to this plaintiff that plaintiff would receive and was receiving one half of the Jefferson Township farm free and unincumbered, whereas Smith well knew that he, the said Cortez M. Smith and his wife had secured on or about that said day a mortgage of $6400.00 thereon, and another mortgage for $6000.00 was to be placed thereon before the transfer of the title to plaintiff.

(3) On or about July 13 and again on or about October 17, 1927, said Cortez M. Smith induced plaintiff to sign said notes and mortgages for the sum of $12,400.00 by stating to plaintiff that said mortgages were given only upon the other half interest of said Jefferson Township farm which was in the name of the defendants Fortney; and if the Fortneys did not pay their share of the deal, plaintiff would be given his former property back again and the deeds would be cancelled, although said Smith well knew that both mortgages were on the entire farm.

(4) That on or about October 18, 1927, said Cortez M. Smith stated to plaintiff that the German Township farm was absolutely worth $14,600.00 although said Smith well knew that said farm was not reasonably worth $7200.00; and further stated to plaintiff that said farm would be clear, and that plaintiff would receive a deed for said farm unincumbered except a $3000.00 mortgage in favor of the Virginia Joint Stock Land Bank Company.

(5) On or about October 18, 1927, said Cortez M. Smith stated to plaintiff that the mortgage for $3200.00 executed in favor of said Smith on said German Township farm was a mortgage upon only the interest of the defendants Fortney and not against the plaintiff.

(6) When plaintiff desired to obtain legal advice beforehand into the exchange of the Jefferson Township farm, for the German Township farm, said Cortez M. Smith, on or before October 18, 1927, stated to plaintiff, 'That would be spending money foolishly' and I will take care of you myself,' and thereby induced plaintiff to believe that said Smith would care for his interest in the matter.

(7) Sometime after October 18, 1927, to-wit, and while the plaintiff was living with said defendants Fortney on said German Township farm, said Smith interviewing plaintiff separate and apart from the Fortneys told him said Fortneys were trying to beat him out of his property but that he, the said Smith would straighten it up and protect plaintiff's interests; and that it would be necessary to have the Fortneys sign over to plaintiff their share of the German Township farm, and that there was a farmer near Brookville wanting the farm, and if plaintiff would sign up papers for an exchange of farms, plaintiff would come out of the deal with a farm at Brookville clear of all debt and could tell the Fortneys, etc. * * * and Smith would not charge plaintiff any commission for making the deal; and thereafter one night,

said Smith came with his lawyer to the farm and showed plaintiff some papers to sign saying they were the papers by which the Fortneys were turning their half over to plaintiff; and plaintiff signed, not knowing they were a note and mortgage, whereas they were. And said Smith had not then nor at any time arranged a trade with a Brookville farmer whereby plaintiff was to get anything."

At the time of the trial, the real estate agent, Mr. Jeffreys, was deceased, as was also Mrs. Irene Millhoff, wife of the plaintiff.

The plaintiff produced no supporting evidence upon his several specifications of fraud and deceit.

From the cold type, it is apparent that the plaintiff, Millhoff, is and was ignorant and surely was not skilled in the art of trading. He was past sixty years of age and also was hard of hearing. We would have no difficulty in determining that Millhoff was a subject upon whom fraud could be very easily perpetrated. While the original action was brought on his behalf by a guardian, the record discloses that the guardian was removed and Mr. Millhoff was proceeding in the case in his individual capacity. There is no question raised in the case of mental incapacity of the character that would vitiate the contract on that ground alone.

All the written documents as well as the oral testimony of all witnesses who were present at their execution fail to give any support to the plaintiff, Millhoff's, claim of fraud. There is nothing in the written contract of sale and trade which indicates that Mr. Millhoff was to receive an undivided half of the eighty-seven acre farm, free of encumbrances. The deeds and mortgages following are in conformity to the provisions of the written contract. Smith testifies that there never was any intimation to him of such an understanding on the part of Millhoff. Mr. and Mrs. Fortney both testified that while they had the understanding with Mr. Millhoff that they were to pay off the mortgage, yet this plan was not communicated to Smith so far as they know. The refinancing of the mortgage on the eighty-seven acre trace, which was arranged for by the defendant, Smith, was in accordance with the written contract of sale and trade. The contract provided for a mortgage of $7900.00 and after the refinancing the amount remained the same. It appears in the record that Mr. and Mrs. Fortney signed the deed executed by Millhoff and his wife to Smith. They

were not named as grantors, nor do their names appear anywhere except their signatures along with those of Mr. and Mrs. Millhoff. No information is given as to why they signed, and apparently from the inquiries made, no one knows. The jury, in answer to an interrogatory, seem to attach some significance to their signing the deed, as an evidence of fraud. It can not have any such effect. They add nothing to the deed nor take anything from it. Their signatures are mere surplusage and nothing more.

Without going into the evidence as presented in the record at too great length, suffice it to say it is our conclusion that the claim and contention of Mr. Millhoff that the undivided one-half interest in the eighty-seven acre farm was to be deeded to him free and clear of all encumbrance is not supported by the manifest weight of the evidence.

We also make the same observation as to the allegation in the petition that Smith improperly induced the plaintiff, Millhoff, to sign the various deeds, mortgages and so forth.

The claim is also made that Smith misrepresented the value of the German Township farm. Even if this be true, there would be other elements necessary to present in order to constitute actionable fraud. The essential elements of fraud are set forth very fully and correctly in §24, **19 Ohio Jurisprudence**, under the subject of **"Fraud and Deceit," page 335.** This section reads as follows:

"In order to maintain an action for damages for deceit, certain elements must be present. First of all, there must be actual or implied representations or concealment of a matter of fact which relates to the present or past, and which is material to the transaction; secondly, the representation must be false; thirdly, the representation must be made with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; fourthly, it must be made with the intent of misleading another into relying upon it; fifthly, this other person must have relied upon it with a right to so rely; and lastly, injury must have resulted as the consequence of such reliance. All of these ingredients must be found to exist, and the absence of any one of them is fatal to a recovery. The grounds of the action of deceit are fraud and damage, and when both concur the action will lie. Moreover, both must concur to constitute actionable fraud."

It will be observed that one of the elements to constitute actionable fraud is that the party claiming to be defrauded must rely upon the claimed misrepresentation and the conditions must disclose that he was warranted in relying upon it. We think the complete answer barring recovery on this ground is the fact that Mr. Millhoff testified that he knew it was not of that value and that anyone looking at it would so know. He testified that he said to the Fortneys that they could do as they pleased about making the trade. The Fortneys testified that in none of the trades were values fixed on any of the property in their hearing. Smith likewise testifies that they were trading equities in all instances and no values were talked about.

Complaint is also made that Smith interfered with their procuring counsel, under the promise that Smith would look after their interests. This claim, if true, would not be the basis of an action for fraud because it has to do with the future, and not the past or present. However, the presentation of this evidence was proper as it might bear on any other elements of actionable fraud set out in the petition.

Even if it should be conceded that the plaintiff, Millhoff, was entitled to recovery, it is our conclusion that the amount of the verdict is excessive. We base this conclusion on what we deem to be the greater weight of the evidence on the question of values.

Coming now to consider the ground of error in the refusal of the court to give special requests Nos. 1 and 2 before argument, would say that we have no difficulty in arriving at the conclusion that the court properly refused special request No. 2 for the reason that the substance of this charge dealt with a question not in issue in the case.

Special request No. 1 presents a more difficult question. If the case is to be retried we think there should be a modification in the language of this request so as to present to the jury the inquiry as to whether or not the plaintiff relied and had a right to rely on such claimed misrepresentations.

This case has given us a great deal of concern, mainly due to the fact that we are reluctant to overrule the verdict of the jury and the judgment of the trial court. This is particularly manifest in an action of this kind. We have read and reread the record several times in an effort to find substance upon which we could bring ourselves to the viewpoint of sustaining the verdict. The record is very much involved·

and contains page upon page of incompetent testimony, but received without objection and therefore presents no error. During the trial of the case counsel for the plaintiff objected very strenuously to the trial court's direction that certain questions be asked. We are very glad of this opportunity to express our view that there should be no hesitancy on the part of the trial court in examining a witness in the interests of justice so as to clarify and bring out in an understandable way the material facts in issue. Of course, the trial court should use proper discretion and be particularly careful not to over-emphasize one side of the case.

Other than the objections set forth, we find no prejudicial error in the record.

For reasons heretofore stated, the judgment of the lower court will be reversed and the cause remanded for new trial. Exceptions will be allowed.

HORNBECK and BODEY, JJ, concur.