OPINION
{¶ 1} Appellant James St. Vincent ("St. Vincent") appeals the verdict rendered in the Tuscarawas County Court of Common Pleas in favor of Appellee Kimble Mixer Company ("Kimble"). The following facts give rise to this appeal.
 {¶ 2} In November 1994, Kimble, a manufacturer of cement mixers and trucks, and St. Vincent entered into a management services agreement whereby St. Vincent and his corporation, Montville Aircraft Corporation, agreed to provide the management of manufacturing and all the engineering and marketing necessary to sell the products of Kimble.
 {¶ 3} The agreement contained a covenant not to compete which prohibited St. Vincent from sharing product rights or knowledge for a period of three years after termination of the agreement. The agreement also provided that St. Vincent's only compensation was an advance of $7,000.00 a month for six months. After the expiration of the six-month period, St. Vincent would receive compensation based upon the profitability of Kimble.
 {¶ 4} In 2001, Kimble discovered that St. Vincent had embezzled in excess of $1.6 million dollars. An investigation revealed that since 1992, Attorney Bruce Hall permitted St. Vincent to deposit much of the $1.6 million into Hall's IOLTA account. St. Vincent deposited a total of sixty-one checks into Hall's IOLTA account. The checks totaled $559,600.96. These checks included three checks upon which St. Vincent forged Kimble's endorsement. After accepting the deposits, Hall permitted St. Vincent to use the IOLTA account as his personal checking account. St. Vincent would direct Hall regarding the withdrawal of funds. Twenty-seven of the checks Hall wrote to St. Vincent or his companies, from the IOLTA account, were individually equal to or greater than $10,000.
 {¶ 5} Upon discovery of these activities, Kimble filed a complaint, against St. Vincent and several entities operated by St. Vincent, for breach of contract, fraud, bad faith, conversion and piercing the corporate veil. Kimble subsequently amended the complaint to include claims against Hall, individually, and Bruce Hall Co., L.P.A., for conversion, civil conspiracy, civil aiding and abetting, fraudulent conveyance and legal malpractice.
 {¶ 6} This matter proceeded to trial in December 2002. At the close of all the evidence, Hall filed a motion for a directed verdict on all of the claims against him. The trial court granted Hall's motion on December 23, 2002. Following deliberations, the jury granted Kimble judgment, against St. Vincent, on the counts of breach of contract, fraud and conversion. The jury awarded Kimble $2.1 million in compensatory damages and $2.9 million in punitive damages. St. Vincent appealed to this Court. However, on January 10, 2003, St. Vincent filed a petition for bankruptcy in federal district court in Florida. On September 11, 2003, the bankruptcy court granted a discharge and St. Vincent pursued its appeal.
 {¶ 7} On June 9, 2004, we dismissed St. Vincent's appeal concluding that we lacked jurisdiction to rule on the assignments of error because the trial court's judgment entry was not a final appealable order. See Kimble Mixer Co. v. St. Vincent,
Tuscarawas App. No. 2003 AP 02 0014.
 {¶ 8} Kimble also appealed. On March 31, 2004, we remanded the matter, to the trial court, for the court to state its specific reasons for granting Hall's motion for a directed verdict as it pertained to Kimble's claims against Hall. SeeKimble Mixer Co. v. Hall, Tuscarawas App. No. 2003 AP 01 0003,2004-Ohio-1740. On July 30, 2004, the trial court issued specific reasons pursuant to this Court's limited remand. Kimble appealed the trial court's decision regarding the directed verdict. On February 22, 2005, the Court issued a memorandum opinion and judgment entry affirming the trial court's decision. See KimbleMixer Co. v. Hall, Tuscarawas App. No. 2003 AP 01 0003,2005-Ohio-794.
 {¶ 9} Thereafter, on May 11, 2005, the trial court assessed court costs to St. Vincent and waived payments of those costs and ordered the case closed and removed from the pending docket. St. Vincent filed a motion to dismiss all remaining claims of Kimble, for lack of prosecution, and also moved for a waiver of an additional assessment of court costs. The trial court scheduled St. Vincent's motion for a non-oral hearing. However, on August 19, 2005, prior to the non-oral hearing, Kimble dismissed, without prejudice, all remaining and pending claims. On August 26, 2005, the trial court docketed a judgment entry acknowledging the voluntary dismissal of all remaining claims and closed the case file.
 {¶ 10} On September 23, 2005, St. Vincent filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 11} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY GIVING AN INCORRECT JURY INSTRUCTION AND BY FAILING TO GIVE THE CORRECT JURY INSTRUCTION ON THE LAW OF INDEPENDENT CONTTRACTOR-PRINCIPAL AND EMPLOYEE-PRINCIPAL RELATIONSHIP.
 {¶ 12} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING TESTIMONY AND ADMISSION OF EVIDENCE REGARDING AN EXPUNGED CRIMINAL CONVICTION AND A CRIMINAL CONVICTION MORE THAN TEN YEARS OLD IN VIOLATION OF EVIDENCE RULES 609, 403 AND 404.
 {¶ 13} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING TESTIMONY FROM THE PLAINTIFF'S EXPERT WITNESS THAT WAS BEYOND HIS QUALIFICATIONS AND AREA OF EXPERTISE AS AN EXPERT WITNESS.
 {¶ 14} "IV. THE TRIAL COURT ABUSED ITS DISCRETION BY QUESTIONING THE DEFENDANT JAMES ST. VINCENT AND ASSISTING THE PLAINTIFF IN BOTH PROVING ITS CASE IN CHIEF AND DEFENDING THE DEFENDANT'S COUNTERCLAIMS.
 {¶ 15} "V. THE TRIAL COURT ERRED AS A MATTER OF LAW BY ALLOWING THE JURY TO AWARD DAMAGES IN EXCESS OF THE PLAINTIFF'S PRAYER AND BEYOND ANY REASONABLE INTERPRETATION OF THE ADMITTED EVIDENCE."
 I {¶ 16} In his First Assignment of Error, appellant maintains the trial court erred when it gave an incorrect jury instruction and refused to give his proposed jury instruction on the law of independent contractor. We disagree.
 {¶ 17} St. Vincent argues that he timely proposed, to the trial court, a correct jury instruction setting forth the law regarding the lack of fiduciary relationship between an independent contractor and a principal versus the fiduciary duties owed by an employee to his employer. The trial court declined to instruct the jury pursuant to St. Vincent's proposed instruction. St. Vincent objected to the trial court's jury instruction before the instruction was read to the jury and at the conclusion of the jury charge. Tr. Vol. XI at 1861-1862, 1870-1871, 1945.
 {¶ 18} In Herron v. Baker Hi-Way Express, Tuscarawas App. No. 2003 AP 10 0080, 2004-Ohio-6681, at ¶ 45, we recently explained that "[o]ur standard of review on a claim of improper instructions is to consider the jury charge as a whole, and determine whether the charge given misled the jury in a manner materially affecting the party's substantial rights. Kokitka v.Ford Motor Co. (1995), 73 Ohio St.3d 89, 93, * * *. A jury is presumed to follow the instructions given it by the court. Statev. Henderson (1988), 39 Ohio St.3d 24, * * *."
 {¶ 19} Therefore, we must determine whether the trial court's refusal to give the requested jury instruction constituted an abuse of discretion. Dramble v. Marc W. Lawrence Bldg. Corp.,
Stark App. No. 2001CA00332, 2002-Ohio-4752, at 69, citing Statev. Wolons (1989), 44 Ohio St.3d 64, 68. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. It is based upon this standard that we review St. Vincent's First Assignment of Error.
 {¶ 20} The jury instruction proposed by St. Vincent is as follows:
 {¶ 21} "JURY INSTRUCTION NUMBER 1:
 {¶ 22} "Independent Contractor — No Fiduciary duty:
 {¶ 23} "1. There is no fiduciary relationship or duty between an independent contractor and his employer unless both parties understand that the relationship is one of special trust and confidence. An employer's allegation that he reposed a special trust or confidence in an independent contractor is not sufficient as a matter of law to prove the existence of any fiduciary duty or relationship without evidence that both parties understood that a fiduciary relationship specifically existed. [Citations omitted.]
 {¶ 24} "2. `Fiduciary relationship or fiduciary duty' means a relationship in which one party to the relationship places a special confidence or trust in the integrity and fidelity of the other party to the relationship, and there is a resulting position of superiority or influence acquired by virtue of the special trust. [Citation omitted.] A fiduciary is a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with such undertaking. [Citations omitted.]
 {¶ 25} "3. I hereby instruct you that as a matter of law, neither James St. Vincent or Montville Aircraft Corporation entered into any fiduciary relationship nor owed any fiduciary duty to the Kimble Mixer Company by their adoption of the specific language at paragraph 9, in the Management Services Agreement:
 {¶ 26} "9. Limits on Authority. Montville acknowledges that the relationship established between Company and Montville hereunder does not constitute that of employer and employee, partnership, joint venture or agency. The status of Montville hereunder is that of an independent contractor. Montville is not granted any right or authority to assume or to create any obligation or responsibility, express or implied, on behalf of or in the name of the Company or to bind the Company in any manner or to anything whatsoever.'" St. Vincent's Notice of Proposed Jury Instructions, Dec. 18, 2002, at 2.
 {¶ 27} The trial court declined to use St. Vincent's proposed instruction and instead, instructed the jury as follows:
 {¶ 28} "Fiduciary Duty. If you find, by the greater weight of the evidence, that Plaintiff and Defendant, James St. Vincent, had a relationship that required the Defendant to act primarily for the benefit of the Plaintiff in matters connected with the relationship, then the Defendant owed to the Plaintiff afiduciary duty." Jury Instructions, Jan. 3, 2003, at 12.
 {¶ 29} St. Vincent argues the jury instruction given by the trial court was insufficient, incomplete, inaccurate and misleading and based upon this error alone, the verdict against him requires a reversal and remand for a new trial. We reject St. Vincent's argument for the following reasons.
 {¶ 30} First, the definition of "fiduciary" is almost identical to the definition used by the Ohio Supreme Court inStrock v. Pressnell (1988), 38 Ohio St.3d 207. In the Strock
decision, the Court defined a "fiduciary" as "a person having a duty, created by his understanding, to act primarily for thebenefit of another in matters connected with his undertaking." (Emphasis sic.) Id. at 216.
 {¶ 31} Second, during closing argument, counsel for St. Vincent had an opportunity to clarify the definition of "fiduciary duty" in accord with the trial court's jury instructions. Specifically, counsel for appellant stated:
 {¶ 32} "Jim St. Vincent was an independent contractor, he was the middle man, he was an independent broker, he was operating under independent contractor agreements; different rules apply. The Judge spent over an hour explaining to you the rules, the laws of the state regarding an independent contractor. And the Judge explained to you in those rules of law that you have to follow, that we have to follow, that an independent contractor owes no fiduciary responsibility to a principal other than that which is specifically set forth in the contract. Whereas, an employee owes a greater fiduciary responsibility." Tr. Vol. XI at 1976-1977.
 {¶ 33} "Jim St. Vincent was an independent contractor. He was the middle man, he was the broker, he was not an employee. He had no fiduciary duty except to do what is specifically and narrowly defined within the Agreement relating to the product." Id. at 1991.
 {¶ 34} Thus, in closing argument, counsel for St. Vincent was able to present his argument that no fiduciary relationship existed between St. Vincent and Kimble, which was the same statement that St. Vincent proposed in paragraph three of his jury instructions.
 {¶ 35} Third, we agree with the trial court's finding that the proposed jury instruction was confusing. Tr. Vol. XI at 1862. However, in refusing to instruct the jury pursuant to appellant's proposed jury instructions, the trial court specifically noted that counsel for St. Vincent would have the opportunity to define the meaning of "fiduciary duty" during closing argument. Which, as noted above, counsel for St. Vincent did. The trial court's decision refusing to instruct the jury according to St. Vincent's proposed jury instructions is supported by the Ohio Supreme Court's decision in Bahm v. Pittsburgh L.E.R. Co. (1996),6 Ohio St.2d 192. In the Bahm case, the Court explained:
 {¶ 36} "A court in considering the propriety of any jury instruction must always bear in mind that the purpose of the jury instruction is to clarify the issues and the jury's position in the case. It must be remembered that juries are composed of ordinary men on the street, not trained grammarians, and that fine distinctions in the meaning of words or phrases are not ordinarily recognized by the average layman. Thus, in considering the propriety of any instruction, the meaning of the words used in the instruction must be thought of in their common meaning to the layman and not what such words mean to the grammarian or the trained legal mind." Id. at 194.
 {¶ 37} Fourth, St. Vincent's proposed jury instruction would have taken away from the jury the determination of whether a fiduciary duty existed between St. Vincent and Kimble because the proposed instruction specifically stated that no such relationship existed. Clearly, the determination of whether such a relationship existed between St. Vincent and Kimble was within the province of the jury.
 {¶ 38} For the foregoing reasons, we do not find the trial court abused its discretion when it refused to instruct the jury pursuant to St. Vincent's proposed jury instruction.
 {¶ 39} St. Vincent's First Assignment of Error is overruled.
 II {¶ 40} St. Vincent contends, in his Second Assignment of Error, the trial court erred when it permitted into evidence testimony regarding an expunged criminal conviction and a criminal conviction more than ten years old in violation of Evid.R. 609, 403 and 404. We disagree.
 {¶ 41} Prior to the commencement of trial, St. Vincent filed a motion in limine seeking to prohibit any testimony relating to an expunged criminal conviction, another conviction that was more than ten years old and a multiple count indictment filed against him. The trial court denied St. Vincent's motion. Tr. Vol. II at 162-163. The trial court also overruled timely raised trial objections thereby permitting counsel for Kimble to cross-examine St. Vincent regarding these matters. Tr. Vol. IV at 648-652.
 {¶ 42} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173, 180. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion. Evid.R. 609 addresses the issues raised in this assignment of error. The pertinent subsections of this rule provide as follows:
 {¶ 43} "(B) Time limit.
 {¶ 44} "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of community control sanctions, post-release control, or probation, shock probation, parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.
 {¶ 45} "(C) Effect of pardon, annulment, expungement, orcertificate of rehabilitation
 {¶ 46} "Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, expungement, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, expungement, or other equivalent procedure based on a finding of innocence."
 {¶ 47} St. Vincent challenges the trial court's admission of evidence regarding the following: a 1980 grand theft conviction that was subsequently expunged; evidence of passing bad checks; and other civil lawsuits.
 {¶ 48} A. Expunged 1980 Grand Theft Conviction
 {¶ 49} St. Vincent argues evidence of his 1980 conviction should not have been admitted at trial because it was over ten years old and had been expunged. Under Evid.R. 608(B), the trial court did not abuse its discretion when it determined the probative value of the conviction outweighed its prejudicial effect. A review of the testimony reveals that St. Vincent's conviction, for grand theft in 1980, is based upon a set of facts almost identical to those there were presented in the case sub judice. In 1980, St. Vincent fraudulently misdirected customer payments away from his employer, Metro Equipment, in the form of commissions and improper rentals of company equipment. Tr. Vol. IV at 651-652; Tr. Vol. VIII at 1416-1418.
 {¶ 50} This prior conviction is relevant. It was introduced to establish that St. Vincent was not making a mistake when he engaged in conduct contrary to the management services agreement he entered into with Kimble.[1] In the case sub judice, as in his 1980 conviction, St. Vincent claimed his actions were the result of misreading the contract. Further, the 1980 conviction for grand theft was admissible under Evid.R. 404(B) which provides as follows:
 {¶ 51} "(B) Other crimes, wrongs or acts
 {¶ 52} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 53} This evidence established that St. Vincent had knowledge of the various effective means to embezzle funds as he used similar methods during his employment with Metro. Finally, as discussed below, St. Vincent had a subsequent conviction, in 1998, for passing bad checks, which was punishable by imprisonment in excess of one year.
 {¶ 54} 1998 Conviction for Passing Bad Checks
 {¶ 55} In his brief, St. Vincent argues his conviction for passing bad checks resulted from a stop payment order against a check for goods and was subject to a legitimate UCC Article 2 dispute. At trial, St. Vincent testified that he pled guilty to felony three and felony four counts of passing bad checks. On appeal, St. Vincent does not explain how he was prejudiced by the trial court's admission of this testimony. The record indicates counsel for St. Vincent objected to the questions regarding his prior convictions for passing bad checks. Tr. Vol. IV at 650. Following a side bar discussion, counsel for Kimble moved on and began questioning St. Vincent about his conviction for grand theft. Id. at 650-651. Under Evid.R. 609(B), this evidence of a prior conviction for passing bad checks was admissible because it occurred within the past ten years and was probative in deciding the factual issues presented in this case.
 {¶ 56} Prior Civil Lawsuits
 {¶ 57} Finally, St. Vincent challenges the introduction of testimony regarding prior civil lawsuits involving Textron and Medina Ready-Mix which was the result of St. Vincent's fraudulent conduct. St. Vincent purchased trucks through a floor planning arrangement with Textron, in which Textron took a lien on the trucks. Tr. Vol. VIII at 1422. St. Vincent fraudulently obtained clear titles to the trucks and sold them without informing the lender/lien holder. Id. at 1422-1423. When the lender/lien holder attempted to verify that St. Vincent still had possession of the trucks, St. Vincent would contact the customers and request the customers to return the trucks for needed servicing. Id. at 1423-1424. The customers would then return the truck, to St. Vincent's lot, in time for the lien holder's inspection. Id. at 1425.
 {¶ 58} This scheme is similar to the way St. Vincent sold Kimble inventory representing that he was the true owner. See Tr. Vol. IV at 630-631. As such, this evidence was admissible under Evid.R. 608(B) which provides:
 {¶ 59} "(B) Specific instances of conduct
 {¶ 60} "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."
 {¶ 61} This testimony was probative of St. Vincent's truthfulness and therefore, was admissible to establish motive, intent, preparation and plan.
 {¶ 62} Accordingly, based upon our review of the challenged evidence, we conclude the trial court did not abuse its discretion when it permitted counsel for Kimble to question St. Vincent about his prior criminal convictions and civil lawsuits.
 {¶ 63} St. Vincent's Second Assignment of Error is overruled.
 III {¶ 64} In his Third Assignment of Error, St. Vincent maintains the trial court erred when it permitted testimony from Kimble's expert witness that exceeded his qualifications and area of expertise as an expert. We disagree.
 {¶ 65} Specifically, St. Vincent challenges the testimony of Attorney Charles Kettlewell, an attorney called as an expert witness on behalf of Kimble. St. Vincent argues the trial court should not have permitted Mr. Kettlewell to offer his opinions upon the propriety of his right to receive commissions from arranging third-party sales, third-party financing and sales of obsolete inventory and equipment pursuant to the terms of the management services agreement. St. Vincent contends this testimony invaded the province of the jury and tainted the proceedings.
 {¶ 66} The trial court possesses considerable discretion in deciding the competency of an expert and the admissibility of expert testimony. Nichols v. Hanzel (1996),110 Ohio App.3d 591, 597; Colboch v. Uniroyal Tire Co., Inc. (1996),108 Ohio App.3d 448, 461. Thus, as a reviewing court, we review the admission of expert testimony under an abuse of discretion standard. State v. Awkal (1996), 76 Ohio St.3d 324, 331. Further, a trial court's discretion is guided by the requirements of Evid.R. 702, which must be satisfied before an expert's testimony is admissible. State v. Bragg (June 11, 1999), Ross App. No. 98CA2444.
 {¶ 67} A witness will qualify as an expert if he or she demonstrates some special knowledge on the particular subject acquired either by study of recognized authorities or by practical experience. State Auto Mut. Ins. Co. v. ChryslerCorp. (1973), 36 Ohio St.2d 151, 160. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge she possesses will aid the trier-of-fact in performing its fact-finding function." State v.Baston (1999), 85 Ohio St.3d 418, 423, citing State v.D'Ambrosio (1993), 67 Ohio St.3d 185, 191. An expert qualified to testify in one subject, however, may not be qualified to testify on another related subject. Campbell v. The DaimlerGrp., Inc. (1996), 115 Ohio App.3d 783, 793.
 {¶ 68} We have reviewed the portion of Attorney Kettlewell's testimony that St. Vincent challenges at pages 538 to 544 of the transcript. In doing so, we note that the trial court specifically found, following an objection by counsel for St. Vincent, as follows:
 {¶ 69} "THE COURT: * * * Mr. Kettlewell is here as an expert witness for the plaintiff regarding in essence the claims of plaintiff against Bruce Hall. Right thus far?
 {¶ 70} "MR. BUTZ: Absolutely.
 {¶ 71} "THE COURT: I allowed clearly on cross examination by Mr. Beck and Mr. Hall this witness, Mr. Kettlewell, to answer questions as a lawyer, not as an expert but as a lawyer relating to contractual issues or non-contractual issues. Greg went into that in some detail. To the extent that you're asking him this question as it relates to the claims of the plaintiff against Bruce Hall I would allow that. Is that the reason you're asking him questions or is it relating to Kimble's claims against James St. Vincent?
 {¶ 72} "MR. BUTZ: No, it relates to the questions of Mr. Hall because it's been suggested on cross examination that Mr. Hall's conduct was proper.
 {¶ 73} "THE COURT: Right.
 {¶ 74} "MR. BUTZ: Thereby expunging the taint that is the primary basis of Mr. Kettlewell's decision as to — or conclusion —
 {¶ 75} "THE COURT: If you're telling me this line of questioning relates to the claims of Kimble against Bruce Hall I'm going to allow it.
 {¶ 76} Attorney Butz then asked the following question of Attorney Kettlewell:
 {¶ 77} "Q. Mr. Kettlewell, for this next question assume for me that person A is subject to this agreement and person A is told by the manufacturer to sell the product at $40,000. Person A then with that information goes to the customer and charges the customer $43,000, takes the $3,000 for himself, doesn't tell the manufacturer about the additional $3,000. Would person A be in violation of this agreement?
 " * * * {¶ 78} "A. I do have an opinion. The opinion is yes it would be in violation of the agreement.
 {¶ 79} "Q. Okay. There has been a discussion of the money transferred to Attorney Hall's account and you were asked about whether or not Mr. Hall had exerted control over those funds. Correct?
 {¶ 80} "A. Yes.
 {¶ 81} "Q. Under the circumstances of this case given Mr. Hall's knowledge do you have an opinion based upon a reasonable degree of professional certainty whether Attorney Hall has exerted control over these funds in his trust account?
 " * * * {¶ 82} "A. Yes I have an opinion. The opinion is that when any attorney, including Mr. Hall, takes possession of funds into his trust account that he has obtained control over those funds and that control is regulated. Tr. Vol. IV at 539-542.
 {¶ 83} Based upon our review, we conclude Attorney Kettlewell's testimony was not beyond his qualifications and area of expertise as an expert nor was it beyond the scope of cross-examination. "As a general rule, the scope of redirect examination is limited to matters inquired into by the adverse party on cross-examination. [Citations omitted.] `The control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof.'" Schmelzer v. Lesar,
Fairfield App. No. 03-CA-15, 2004-Ohio-2435, at ¶ 45.
 {¶ 84} It appears the issue arose because on cross-examination of Attorney Kettlewell, Attorney Butz asked him questions regarding consulting fees and the covenant not to compete that were contained in the management services agreement between St. Vincent and Kimble. See Tr. Vol. IV at 515-518. Because St. Vincent asked general contract questions regarding interpretation of the management services agreement, prior to St. Vincent's objection to similar contract interpretation questions by Kimble, we conclude St. Vincent opened the door to such questions by Kimble. As noted above, the trial court specifically reminded counsel that he permitted him to question Attorney Kettlewell to answer questions, as a lawyer and not an expert, concerning contractual issues or non-contractual issues. Tr. Vol. IV at 540.
 {¶ 85} Further, the questions asked by Attorney Butz, on redirect, were related to Mr. Hall's conduct. The questions on redirect explained how St. Vincent received the funds that he deposited into his co-defendant's IOLTA account.
 {¶ 86} Accordingly, the trial court did not abuse its discretion when it permitted Attorney Kettlewell to testify, on redirect, about the hypothetical concerning Person A under the management services agreement, because Attorney Kettlewell had already been asked, on cross-examination, to interpret certain provisions of this agreement.
 {¶ 87} St. Vincent's Third Assignment of Error is overruled.
 IV {¶ 88} St. Vincent contends, in his Fourth Assignment of Error, the trial court abused its discretion by questioning St. Vincent and assisting Kimble in proving its case in chief and defending St. Vincent's counterclaims. We disagree.
 {¶ 89} In analyzing this assignment of error, we begin by noting that St. Vincent did not object, on the record, to the trial court's questions. Thus, we must address this assignment of error under a plain error doctrine. Implementation of the plain error doctrine is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Reichert v. Ingersoll (1985),18 Ohio St.3d 220, 223; State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. The plain error doctrine permits correction of judicial proceedings where error is clearly apparent on the face of the record and is prejudicial to the appellant. Reichert at 223. Although the plain error doctrine is a principle applied almost exclusively in criminal cases, the Ohio Supreme Court has stated that the doctrine may also be applied in civil causes, if the error complained of "would have a material adverse affect on the character and public confidence in judicial proceedings." Id., citing Schade v. Carnegie Body Co.
(1982), 70 Ohio St.2d 207, 209; Yungwirth v. McAvoy (1972),32 Ohio St.2d 285, 288. It is based upon this standard that we review St. Vincent's Fourth Assignment of Error.
 {¶ 90} In the case of Jenkins v. Clark (1982),7 Ohio App.3d 93, the Second District Court of Appeals thoroughly discussed the issue of a trial court questioning witnesses. The court stated as follows:
 {¶ 91} "In regard to the examination of witnesses, the trial judge is something more than a mere umpire or sergeant at arms to preserve order in the courtroom. He has active duties to perform in maintaining justice and in seeing that the truth is developed and may for such purpose put proper questions to the witnesses, and even leading questions. Gilhooley v. Columbus Ry. Power L.Co. (1918), 20 Ohio N.P. (N.S.) 545. If at any time during the trial of a cause a judge is prompted, in the interest of justice, to develop facts germane to an issue of fact to be determined by the jury, it is proper that he do so. Dependabilt Homes, Inc. v.Haettel (1947), 81 Ohio App. 422, * * *.
 {¶ 92} "Although there may be a difference of opinion and taste as to how much a judge should ask questions from the bench, he may, according to the generally accepted view, in his discretion, propound to witnesses, proper and pertinent questions which are designed to develop the true character of the transaction in question, which counsel have failed to propound, and thus elicit testimony more fully revealing the true facts in the case. Gilhooley, supra. In fact, there should be no hesitancy on the part of the trial court, in the interest of justice, in examining a witness so as to clarify and bring out in an understandable way the material facts in issue, using proper discretion and being particularly careful not to overemphasize one side of the case. Smith v. Milhoff (App. 1935), 20 Ohio Law Abs. 537.
 {¶ 93} "To this end the trial court may ask leading questions where counsel cannot do so although, of course, the court should avoid asking a question in such a leading form as to indicate to the jury the mind of the court on a controverted fact.Gilhooley, supra. He must use great care not to assume the role of an advocate and should not conduct himself so as to give the jury any impression of his feelings (sic) State, ex rel. Wise v.Chand (1970), 21 Ohio St.2d 113, * * *. The third and fourth paragraphs of the syllabus in Chand are instructive, to wit:
 {¶ 94} "`3. In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness.
 {¶ 95} "`4. In a jury trial, where the intensity, tenor, range and persistence of the court's interrogation of a witness can reasonably indicate to the jury the court's opinion as to the credibility of the witness or the weight to be given to his testimony, the interrogation is prejudicially erroneous.'
 {¶ 96} "In the absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the court acted with impartiality in attempting to ascertain a material fact or to develop the truth. Gilhooley,
supra." Id. at 97-98.
 {¶ 97} In the case sub judice, St. Vincent provides excerpts from the transcript in support of this assignment of error. We agree with Kimble's conclusion that some of the questioning, by the trial court, was the court's attempt to clear up confusion and keep the trial moving. Although the trial court asked St. Vincent numerous questions, we decline to find prejudice merely based upon the number of questions asked.
 {¶ 98} However, one excerpt cited by St. Vincent raises some concern for this Court. This occurred as follows during cross-examination of St. Vincent by Attorney Butz:
 {¶ 99} "Q. Did you tell Gene Dietz that?
 {¶ 100} "A. I don't know but Gene had done work for me before. We put an engine in a car and done some other things.
 {¶ 101} "THE COURT: The question is did you tell him that you were going to pay him?
 {¶ 102} "A. I don't know.
 {¶ 103} "THE COURT: That's a no. Tr. Vol. VIII at 1435.
 {¶ 104} Arguably, this statement by the trial court showed bias and could have been prejudicial to St. Vincent. Kimble argues, in its brief, that the court's demeanor in making the statement and reason for doing so is unattainable from the transcript. St. Vincent suggests that perhaps the trial court was asking a question. We do note that the trial court's statement is not followed by a question mark. However, without an objection, it is not possible to determine the meaning of the trial court's response merely by reading the transcript. If the trial court meant to interpret St. Vincent's response, that clearly was improper. However, without more in the record, we are unable to make that determination.
 {¶ 105} Therefore, we conclude, under a plain error standard of review, that the trial court's questions did not create error that is clearly apparent on the face of the record or prejudicial to St. Vincent.
 {¶ 106} St. Vincent's Fourth Assignment of Error is overruled.
 V {¶ 107} In his Fifth Assignment of Error, St. Vincent maintains the trial court erred when it permitted the jury to award compensatory damages in excess of Kimble's prayer and beyond any reasonable interpretation of the admitted evidence so as to result in a duplication of punitive damages. We disagree.
 {¶ 108} St. Vincent argues that during closing argument, counsel for Kimble repeatedly requested compensatory damages of $1.3 million. St. Vincent further argues that Kimble's Exhibits 3 through 9 support a claim of $1.3 million. However, the jury returned a verdict, for compensatory damages, in the amount of $2.1 million. St. Vincent maintains this award of compensatory damages includes "punitive damages" of $800,000 because that is the amount of the award that exceeds Kimble's request for compensatory damages. St. Vincent also contends the jury erroneously awarded an additional $2.9 million in punitive damages since it included punitive damages in the compensatory award.
 {¶ 109} Upon review of the record in this matter, we conclude the jury's award is supported by the evidence presented at trial. First, counsel for Kimble explained to the jury that Kimble was entitled to damages in the amount of $1,036,000.00 in connection with commissions. Tr. Vol. XI at 1963. Second, evidence presented at trial established that Kimble was entitled to an additional $702,244.35 in damages in connection with other funds wrongfully diverted by St. Vincent. This amount is based upon the following: $35,200.00 for selling Kimble inventory (Tr. Vol. IV at 630-631; $63,910.00 for unauthorized rental of Kimble demo trucks (Id. at 617-619); $144,820.00 for improperly diverting reserves on financing transactions (Id. at 631-632); $229,040.00 for supplier kickbacks (Tr. Vol. VIII at 1270); $67,890.00 for forging checks made payable to Kimble (Tr. Vol. IV at 621-624); and $126,184.35 for diverting a variety of payments from All-Star (Id. at 632).
 {¶ 110} Third, the damage award properly included all amounts paid by Kimble to St. Vincent while St. Vincent was in material breach of the agreement. This totaled $420,000.00, which represented $84,000.00 for a five year period.
 {¶ 111} Based upon the evidence contained in the record, we agree with Kimble's argument that even without an award for lost profits, the jury had sufficient evidence before it to award compensatory damages in at least the amount of $2,158,244.35. The jury's compensatory award was within this figure and does not include punitive damages. Accordingly, the award of punitive damages is not duplicative.
 {¶ 112} St. Vincent's Fifth Assignment of Error is overruled.
 {¶ 113} For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed.
Wise, P.J. Hoffman, J., concurs.
Farmer, J., concurs separately.
[1] "Relevant evidence" is defined as "* * * evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.